**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 21 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CECIL PHILLIP WELLS,

      Plaintiff-Appellant,

v.

DONNA E. SHALALA, Secretary, United
States Department of Health and
Human Services; UNITED STATES
DEPARTMENT OF HEALTH
AND HUMAN SERVICES,

      Defendants-Appellees.

No. 99-1226

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 98-M-1538)

---

Daniel Minahan of Minahan and Shapiro, P.C., Lakewood, Colorado, for
Plaintiff-Appellant.

Kathleen L. Torres, Assistant United States Attorney (Thomas L. Strickland, United
States Attorney, with her on the brief), Denver, Colorado, for Defendants-Appellees.

---

Before **TACHA**, **BALDOCK**, and **BRORBY**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

---

      Around 1979, Plaintiff Cecil Phillip Wells began working as a government auditor

based in the Denver field office of the Department of Health and Human Services (HHS),

Office of Inspector General (OIG), Office of Audit Services (OAS). Plaintiff took

"discontinued service" retirement in May 1997 after declining a reassignment from

OAS' Denver office to OAS headquarters in Washington, D.C as a proffered

accommodation for his claimed inability to travel to field audit sites. Thereafter,

Plaintiff filed suit against HHS and Secretary Shalala under the Civil Service Reform

Act of 1978 (CSRA), as amended, specifically 5 U.S.C. § 7702, alleging constructive

discharge on the basis of disability discrimination and retaliation respectively, in violation

of the Rehabilitation Act of 1973, specifically 29 U.S.C. §§ 791 & 794, and the

Whistleblower Protection Act of 1989 (WPA), specifically 5 U.S.C. § 2302(b)(8) &

(b)(9). After a motion hearing, the district court granted summary judgment in favor of

HHS and Secretary Shalala. Plaintiff appeals. We exercise jurisdiction under 28 U.S.C.

§ 1291. We review the district court's decision to grant summary judgment de novo,

applying the same standard as the district court, Barker v. City of Del City, 215 F.3d

1134, 1137 (10th Cir. 2000), and affirm.[1]

---

[1] At the hearing on HHS's combined motion to dismiss and for summary judgment under Fed. R. Civ. P. 12(b) & 56(b), the district court recited the case's historical facts. Aplt's App. at 46-52. Both Plaintiff and HHS expressly agreed with the court's statement of those facts. Aplt's App. at 52 & 61. Because the record indicates that the district court considered facts outside the pleadings to resolve this action, we construe the district court's judgment in favor of HHS as a grant of summary judgment against Plaintiff on both his discrimination and retaliation claims. See Fed. R. Civ. P. 12(b) (where matters outside the pleadings are presented to and considered by the court, a motion to dismiss for failure to state a cause of action shall be treated as a motion for summary judgment under Fed. R. Civ. P. 56).

# I.

The relevant facts are undisputed. Plaintiff accepted employment with OAS in 1979. The Denver field office of OAS is a part of the Kansas City region which provides audit coverage for ten states. Plaintiff's position description for the Denver field office lists travel as a necessary component of an OAS auditor's duties. A large portion of the Denver field office's responsibilities is to audit public universities in the ten state region.

In November 1996, Plaintiff's supervisors assigned him, along with other auditors, to travel to Iowa City in January 1997 to audit the University of Iowa. In December 1996, Plaintiff sent an e-mail to Barbara Bennett, head of the Kansas City region, and Allan Pewe, Plaintiff's audit manager for technical work, objecting to the travel assignment. Plaintiff questioned the need for the assigned field audit. In his e-mail, Plaintiff also mentioned for the first time that he had been suffering from tendinitis and carpal tunnel syndrome in his right arm. Plaintiff stated he would not be prepared to travel to Iowa on January 6, 1997, as instructed.

On January 3, 1997, Plaintiff faxed a hand-written note to Pewe with an attached letter from his chiropractor. Plaintiff's chiropractor stated she was treating Plaintiff for carpal tunnel syndrome and an injury to his right elbow. She recommended Plaintiff "reduce his typing and heavy lifting workload," but did not mention Plaintiff's claimed inability to travel. In his note, Plaintiff stated he could not carry any type of luggage.

3

Plaintiff requested that his computer keyboard be lowered and ergonomic furniture be provided to him. OAS shortly thereafter provided Plaintiff with a new adjustable keyboard tray and ergonomic keyboard. Plaintiff concluded with the statement: "Cannot go to Iowa City. What do you want me to do instead?"

Around the same time, Plaintiff sent a letter to Terry Eddleman, audit manager for the Denver field office. For the first time, Plaintiff specifically asked to be relieved from travel as an accommodation for his carpal tunnel syndrome and elbow injury. Eddleman responded with a letter requesting Plaintiff, in accordance with federal regulations, see 5 C.F.R. Part 339, to provide OAS specific medical documentation, i.e., history, clinical findings, diagnosis, and prognosis, about his current medical condition by February 3, 1997. OAS delayed Plaintiff's travel to Iowa pending receipt of his medical documentation.

Plaintiff did not respond to Eddleman's request by February 3. Instead, on February 15, 1997, Plaintiff provided Eddleman with a letter from his chiropractor dated February 10. After noting Plaintiff's "wrist, forearm, and elbow pain," the chiropractor recommended only that Plaintiff's "workstation be evaluated and redesigned to decrease the strain on his injured arm." The letter again did not mention Plaintiff's claimed inability to travel and did not provide the requested medical documentation.

On February 24, 1997, Eddleman sent a letter to Plaintiff denying his request to

4

be relieved from travel.  OAS based its decision on Plaintiff's failure to provide medical documentation regarding his ability to perform the essential functions of his job, including travel.  Eddleman expressed his willingness to consider "appropriate accommodations when supported with medical documentation."  At the same time, OAS informed Plaintiff that it would authorize porter and valet expenses for his travel.

Thereafter, Pewe sent an e-mail to Plaintiff on March 19, 1997, informing him that he had been assigned to audit Iowa State University in Ames, Iowa. Pewe instructed Plaintiff to report to Ames on March 31.  Plaintiff responded by sending an e-mail to Eddleman on March 24 indicating he was still undergoing treatment for carpal tunnel syndrome and stating:  "Al Pewe wants me in Iowa next week but I don't see how that is possible."  Eddleman informed Plaintiff that absent OAS's prompt receipt of medical documentation, Plaintiff was expected to report to Ames, Iowa on March 31.  Eddleman further informed Plaintiff that his failure to report would result in disciplinary action. That same day, Plaintiff requested from the office administrator a luggage cart to transport equipment to and from audit sites. Plaintiff received the luggage cart four days later on March 28.

Contrary to instruction, on March 31, 1997, Plaintiff reported to OAS's Denver field office instead of his temporary duty station in Ames, Iowa.  Eddleman subsequently e-mailed Plaintiff directing him to adjust his time sheet to reflect 12.25 hours of AWOL for failing to report to Ames.  In the meantime, Plaintiff contacted Joe Rankin, Director of

Human and Financial Resources, about early retirement. The two men discussed offering Plaintiff a transfer to the Washington D.C. office which, if he declined, would make him eligible for "early" retirement. On April 1, Plaintiff faxed Rankin a letter requesting retirement. The next day, Plaintiff finally provided OAS with a letter from his chiropractor stating, albeit in general terms, that his medical condition prevented him from traveling.

On April 7, 1997, Rankin informed Plaintiff that OAS was offering to reassign Plaintiff from his current position as an auditor in the Denver field office to an auditor at the same pay grade in OAS's Washington, D.C. headquarters, the only location where OAS auditors are not required to travel. The same day, Plaintiff provided a letter to Thomas Roslewicz, Deputy Inspector General for Audits, declining the reassignment and applying for early retirement under the discontinued service (early out) plan. OAS granted Plaintiff's request for discontinued service retirement which became effective May 11, 1997.

On September 2, 1997, Plaintiff filed a formal complaint with HHS' Equal Employment Opportunity Office (EEO) under 29 C.F.R. § 1614.302, alleging constructive discharge from OAS as a result of disability discrimination and retaliation. Based on the foregoing facts, Plaintiff originally claimed only that OAS's failure to reasonably accommodate his physical disability resulted in his constructive discharge. Plaintiff later claimed that OAS also retaliated against him by failing to reasonably

6

accommodate his disability because he had filed a grievance over a performance rating and repeatedly criticized management for malfeasance in discharging its duties to the taxpayer. Following an investigation, EEO issued a thorough seventeen page single-spaced decision denying Plaintiff's claims on June 18, 1998. Plaintiff then filed a civil action against HHS and Secretary Shalala in district court as permitted by 5 U.S.C. § 7702(a)(2)(B). The district court rejected Plaintiff's claims in their entirety.

II.

As a preliminary matter, HHS and Secretary Shalala contend the district court lacked jurisdiction to hear Plaintiff's retaliation claim because he failed to exhaust this claim before the Merit Service Protection Board (MSPB). We reject Defendants' jurisdictional contention. As it applies in this case, § 7702(a)(2)(B) provides that in "<u>any</u> matter" before an executive agency which involves "<u>any</u> issue of discrimination" prohibited under the Rehabilitation Act of 1973, specifically 29 U.S.C. § 791, the agency shall resolve such matter. (emphasis added). The section then provides: "The decision of the agency in any such matter shall be a judicially reviewable action unless the employee appeals the matter to the [Merit Service Protection] Board." 5 U.S.C. § 7702(a)(2)(B). Thus, the plain language of § 7702(a)(2)(B) provides that if an employee alleges disability discrimination under § 791 as a basis for agency action, he may either file suit in the district court <u>or</u> pursue an administrative procedure after an adverse agency decision. 5 U.S.C. § 7702(a)(2)(B); <u>see also</u> 29 C.F.R.

7

§ 1614.310(a).  In addition to his retaliation claim, Plaintiff plainly alleges disability

discrimination under 29 U.S.C. § 791 as a basis for his constructive discharge.[2]  As the

Eleventh Circuit explained in Doyal v. Marsh, 777 F.2d 1526, 1535 (11th Cir. 1985):

> If an employee does not allege that "a basis" of the agency action was
> discrimination, he may appeal an agency decision directly to the MSPB
> and from the MSPB to the court[] of appeals [for the Federal Circuit] . . . .
> [See 5 U.S.C. § 7703(b)].  If, however, the employee does allege
> discrimination, he may either immediately file suit in a district court
> or pursue an administrative procedure.

(emphasis in original).

In other words, following an adverse agency decision, the employee has the option

in a "mixed case" complaint of filing a civil action in the district court rather than

appealing to the MSPB.[3]  Id. at 1536.  This construction of the CSRA makes imminent

sense, for as we recognized in Christo v. Merit Sys. Protection Bd., 667 F.2d 882, 883

(10th Cir. 1981):  "[T]he various statutory provisions of the Act and its legislative history

indicate a clear Congressional preference for combining various aspects of a single

agency determination under one review proceeding, both in the administrative

---

[2]  Although, like his disability discrimination claim, Plaintiff's retaliation claim under the WPA, 5 U.S.C. § 2302(b)(8) & (b)(9) "is based solely on denial of reasonable accommodation," Aple's Supp. App. at 110, such claim is not defined as a discrimination claim under 5 U.S.C. § 7702(a)(1)(B).

[3]  A discrimination action filed in the district court following an adverse agency decision under the CSRA is resolved de novo:  "Nothing in this section shall be construed to affect the right to trial de novo under any provision of law described in subsection (a)(1) [i.e., 29 U.S.C § 791] of this section after a judicially reviewable action, including the decision of an agency under subsection (a)(2) of this section." 5 U.S.C. § 7702(e)(3).

8

and judicial channels." See also Wall v. United States, 871 F.2d 1540, 1545-46 (10th Cir. 1989) (Seymour, J., dissenting) (To obtain judicial review in a "mixed case," an employee may file suit in federal district court after final agency action, "whether the final agency action consists of resolution of a mixed case by the Board, or rejection of the claim by claimant's agency.").[4] To force Plaintiff to bifurcate his case and return to the administrative process for further consideration of his retaliation claim would frustrate principles of judicial economy and serve no useful purpose. See Woodman v. Runyon, 132 F.3d 1330, 1342 (10th Cir. 1997). Accordingly, we now turn to the merits of the case.

III.

As to Plaintiff's claim of constructive discharge resulting from disability discrimination in violation of the Rehabilitation Act of 1973, as amended, specifically 29 U.S.C §§ 791 & 794, the district court decided that Plaintiff raised a genuine issue of material fact regarding whether the problems he was experiencing with his right arm

---

[4] In Wall, an MSRB hearing officer concluded that HHS had not constructively discharged plaintiff from his employment. Rather, plaintiff had voluntarily retired. Because voluntary retirement was not an adverse employment action reviewable by the MSRB, the hearing officer dismissed plaintiff's claim for lack of jurisdiction. After the MSRB denied plaintiff's petition for review, he filed a discrimination action against HHS in the district court. The district court dismissed the action for lack of jurisdiction and a divided panel of this Court affirmed. We held that because the MSRB determined that the hearing officer's decision was "not appealable" to the MSRB under the CSRA, 5 U.S.C. §§ 7702 & 7703, and thus refused to reach the merits of plaintiff discrimination claim, review of that determination rested exclusively with the Federal Circuit under § 7703(b). Wall, 871 F.2d at 1541-44.

constituted a disability. The court further decided as a matter of law, however, that Plaintiff was not a qualified individual with a disability because travel was an essential function of his auditing position with OAS and Plaintiff failed to suggest a reasonable accommodation for his disability. The court also decided as a matter of law that OAS's offer to reassign Plaintiff to its Washington D.C. office, which Plaintiff refused, was a reasonable accommodation for Plaintiff's disability given the facts of the case. Assuming without deciding that Plaintiff's health problems with his arm constitute a disability within the meaning of the Act, we agree with the district court's resolution of this matter.

Section 791 requires federal agencies to affirmatively act to employ disabled individuals. 29 U.S.C. § 791. At the same time, § 794 provides in relevant part: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity conducted by any Executive agency . . . ." Id. § 794(a). To qualify for relief under § 794(a), which applies ADA standards to federal-agency employment discrimination, see id. § 794(d); see also id. § 791(g), Plaintiff must demonstrate that (1) he is a disabled person within the meaning of the law, (2) he is qualified for the job, and (3) he was discriminated against because of his disability. See Woodman, 132 F.3d at 1338. As noted above, we assume Plaintiff is a disabled person. To determine whether Plaintiff is "qualified" for his former

auditing position with OAS, we apply a two-part analysis.  First, we must determine

whether he can perform the essential functions of the job, i.e., functions that bear more

than a marginal relationship to the job at issue.  Id. at 1338-39.  Evidence of whether a

particular function is essential to a job includes (but is not necessarily limited to) (1) the

employer's judgment as to which functions are essential, (2) written job descriptions

prepared before advertising or interviewing applicants for the job, (3) the consequences of

not requiring the incumbent to perform the function, and (4) the current work experience

of incumbents in similar jobs.  29 C.F.R. § 1630.2(n)(3).[5]  Second, if we conclude that

Plaintiff is not able to perform the essential functions of the job, we must determine

whether any reasonable accommodation by OAS would enable him to perform those

functions.  See Woodman, 132 F.3d at 1339.  At this stage, "the relevant inquiry in

determining whether Plaintiff is 'qualified' . . . is whether he has provided evidence that

[]he can be reasonably accommodated– which includes

reasonable reassignment–sufficient to require submission to a jury."  Id. at 1340.

A.

Based on the record before us, we are satisfied that travel is an essential

function of an OAS auditor based outside Washington D.C.   The only evidence

---

[5]  The D.C. Circuit has suggested that whether an individual is "qualified" for a job may, depending upon the circumstances, present a question of fact or a question of law. Swanks v. Washington Metro. Area Transit Auth., 179 F.3d 929, 934 (D.C. Cir.), cert. denied, 120 S. Ct. 614 (1999).  We need not choose between the two approaches in this case, however, because Plaintiff loses as a matter of law under either approach.

Plaintiff proffers to establish that travel is not an essential function of his former position is his self-serving affidavit that OAS could have restructured his position to eliminate necessary travel by directing auditees to provide OAS's Denver office with the necessary books and records for him to review. Plaintiff's affidavit alone, however, is insufficient to overcome OAS's overwhelming evidence to the contrary. See Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995) (conclusory, self-serving affidavit insufficient to withstand motion for summary judgment); Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991) (same).

As to the physical demands and work environment of an OAS auditor, the written position description, of which Plaintiff was well aware, plainly provides:

> Work is generally performed at desks or tables provided by the auditees and working space is shared with other auditors. Most audits involve travel, both commuting and overnight. Audits requiring travel may be for extended periods. Working hours must often be varied to meet auditee's hours or to interview individuals at their residences or places of business. Work may be performed in other than a normal office environment. The majority of work is performed in the auditee's facilities including visits to offsite locations.

The Denver field office of OAS serves ten states. All of the auditors in the office receive travel assignments. Three of Plaintiff's supervisors, Terry Eddlemen, Barbara Bennett, and Allen Pewe, stated in their respective affidavits that travel is a necessary component of providing OAS audit services to this large geographical area. Plaintiff's supervisors stated that travel is necessary because effective auditing requires auditors to have access to both the records and employees at the audited site. Restructuring Plaintiff's job duties

12

to eliminate travel inevitably would have required other OAS auditors in the Denver field office to travel more frequently. See Smith v. Midland Break, Inc., 180 F.3d 1154, 1178 (10th Cir. 1999) (en banc) (ADA does not require substantial restructuring of a job's essential functions). Thus, travel clearly bears "more than a marginal relationship" to Plaintiff's job. Woodman, 132 F.3d at 1338-39. The district court properly held that Plaintiff failed to overcome OAS's evidence and establish a genuine issue of material fact regarding the question of whether travel was an essential function of his position with OAS.

B.

Because Plaintiff cannot perform an essential function of an OAS auditor based in the Denver field office, we next must determine whether any reasonable accommodation would have enabled him to perform that function. See Hudson v. MCI Telecom. Corp., 87 F.3d 1167, 1168 (10th Cir. 1996). Plaintiff bore the initial burden of initiating an interactive process with OAS by proposing an accommodation and showing that the accommodation was objectively reasonable. See Woodman, 132 F.3d at 1344 (initial burden is on the employee to suggest a "plausible accommodation"); see also Midland Break, 180 F.3d at 1171 (interactive process begins by an employee expressing a desire for reassignment if no reasonable accommodation is possible in his existing job).

Prior to receiving the much-belated opinion from Plaintiff's chiropractor that Plaintiff was unable to travel, OAS provided Plaintiff with every accommodation he

13

requested. In January 1997, OAS relieved Plaintiff of his overnight travel assignments pending receipt of medical documentation regarding his condition. Upon Plaintiff's request, OAS purchased Plaintiff an adjustable keyboard tray, ergonomic keyboard, and luggage cart. OAS also advised Plaintiff that it would reimburse him for porter and valet expenses while he was on assignment. OAS made every effort to reasonably accommodate Plaintiff's disability during this period. Still, Plaintiff steadfastly refused any accommodation short of being relieved from his travel obligations. See 29 C.F.R. § 1630.9(d) (if an employee rejects a reasonable accommodation, aid, service, opportunity or benefit necessary for him to perform an essential function of his position, he is not considered a qualified individual with a disability). Given that travel is an essential function for an OAS auditor outside Washington D.C., Plaintiff's request to be relieved from travel indefinitely is not, as a matter of law, a reasonable or even plausible accommodation. See, e.g., Milton v. Scrivner, Inc., 53 F.3d 1118, 1124 (10th Cir. 1995) (employer is not required to reallocate job duties to change the essential functions of a job) (citing Gilbert v. Frank, 949 F.2d 637, 642 (2d Cir. 1991) (elimination of any of a job's essential functions is not a reasonable accommodation)).

The record reveals that throughout the relevant time period, Plaintiff simply refused to engage in a good faith, interactive process with OAS in an attempt to resolve the problem. See Templeton v. Neodata Servs. Inc., 162 F.3d 617, 619 (10th Cir. 1998) (ADA envisions an "interactive process that requires participation by both parties"). Despite

14

ample time to do so, Plaintiff failed to provide OAS with any medical documentation to support his demand for relief from travel until after he had requested early retirement. See id. (where employee fails to provide necessary medical documentation, employer is not liable for failing to provide a reasonable accommodation). Once OAS finally received the letter from Plaintiff's chiropractor indicating Plaintiff's condition would not permit him to engage in overnight travel, OAS offered to reassign Plaintiff to its headquarters in Washington D.C., the only office where travel is not an essential function for an OAS auditor. Plaintiff refused the reassignment. Without the offered reassignment, Plaintiff would have been ineligible for early retirement. As we stated in Midland Break, 180 F.3d at 1177:

> [The ADA] requires the employer to use reasonable accommodation to keep the employee in his or her existing job, and if that cannot be accomplished, to use reasonable accommodation to offer a reassignment to another vacant job which that person would be qualified to perform with or without reasonable accommodation. Once the employer has offered such a reassignment, its duties have been discharged.

The district court properly held that Plaintiff failed to carry his burden to suggest any reasonable accommodation short of reassignment for his inability to perform an essential function of his job.

The simple fact is Plaintiff could not perform an essential function of his job and did not propose a reasonable accommodation for his inability to perform that function. Because of his inability to travel to field audit sites, Plaintiff simply was no longer "qualified" for an auditing position in OAS's Denver field office at the time he elected

15

early retirement. Moreover, Plaintiff gave OAS no indication of when, if ever, he might be able to resume travel to field audit sites. See Hudson, 87 F.3d at 1169 (employer is not required to wait indefinitely for a disabled employee to recover). Because Plaintiff is not a "qualified individual with a disability" entitled to protection under 29 U.S.C. §§ 791 & 794, OAS did not illegally discriminate against him by failing to reasonably accommodate his disability. Accordingly, Plaintiff's constructive discharge claim based on disability discrimination necessarily fails. See Sanchez v. Denver Public Sch., 164 F.3d 527, 534 (10th Cir. 1998) (In the context of discrimination, "[c]onstructive discharge occurs when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign.") (emphasis added).

IV.

Plaintiff also claims OAS discriminated against him in retaliation for his "whistleblowing" activities in violation of the Whistleblower Protection Act of 1989 (WPA), as amended, specifically 5 U.S.C. § 2302(b)(8) & (b)(9). Apparently prior to experiencing health problems, Plaintiff filed a grievance over a poor performance rating and repeatedly criticized OAS for malfeasance. Plaintiff claims these disclosures led to OAS's failure to reasonably accommodate his disability, resulting in his constructive discharge. Because we have already concluded, however, that OAS did not fail to reasonably accommodate Plaintiff's disability, and thus did not engage in disability

16

discrimination against Plantiff, his claim of constructive discharge claim based on retaliation similarly fails.

The WPA proscribes any unfavorable personnel decision against an employee making certain disclosures protected under the Act.[6] See Grisham v. United States, 103 F.3d 24, 26 (5th Cir. 1997). To establish a prima facie case for whistleblowing under the WPA, Plaintiff must show by a preponderance of the evidence that (1) he made a protected disclosure, (2) he was subjected to an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action. See Willis v. Department of Agriculture, 141 F.3d 1139, 1143 (Fed. Cir. 1998); see also Trimmer v. Department of Labor, 174 F.3d 1098, 1101-02 (10th Cir. 1999) (under the whistleblower provisions of the Energy Reorganization Act, an employee must

---

[6] Subsections (b)(8) & (b)(9) of 5 U.S.C. § 2302 provide in relevant part:
  (b) Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority–
    (8) take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee . . . because of–
      (A) any disclosure or information by an employee . . . which the employee . . .reasonably believes evidences–
        (i) a violation of any law, rule, or regulation, or
        (ii) gross mismanagement, a gross waste of funds, [or] an abuse of authority, . . .
    if such disclosure is not specifically prohibited by law . . . .
    (9) take or fail to take, or threaten to take or fail to take, any personnel action against any employee . . . because of–
      (A) the exercise of any . . . complaint, or grievance right by any law, rule, or regulation . . . .

establish that protected activity was a "contributing factor" in an unfavorable personnel decision). In Trimmer, we equated the phrases "unfavorable personnel decision" and "adverse employment action." Id. at 1103. Thus, we define those phrases in the same manner, applying a "case-by-case approach, examining the unique factors relevant to the situation at hand." Sanchez, 164 F.3d at 532 (Title VII and ADEA retaliation claim) (internal quotations omitted).

In this case, assuming without deciding that Plaintiff's disclosures were protected under the WPA, Plaintiff has failed to establish that OAS subjected him to an unfavorable personnel decision or adverse employment action within the meaning of 5 U.S.C. § 2302(b)(8) & (b)(9). Plaintiff's retaliation claim is based on OAS's alleged failure to reasonably accommodate his disability. As previously discussed, however, the only accommodation Plaintiff proposed for his disability was the restructuring of his position to eliminate travel from his duties. But because travel is an essential function of an OAS auditor based in the Denver field office, elimination of this function is not a reasonable accommodation. Supra pp. 11-16. Plaintiff's requested accommodation was a viable option only if Plaintiff would accept reassignment to OAS headquarters in Washington D.C. Plaintiff refused to accept reassignment and voluntarily retired instead. Accordingly, the district court properly held that because Plaintiff failed to establish OAS subjected him to any unfavorable personnel decision or adverse employment action, OAS did not violate the whistleblower provisions of 5 U.S.C. § 2302(b)(8)

18

& (b)(9).

AFFIRMED.