**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 1 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DR. THOMAS R. MONROE,

    Plaintiff-Appellant,

v.

PUEBLO POLICE DEPARTMENT;
JAMES BILLINGS, Pueblo Police
Chief; PUEBLO POLICE OFFICER
WARING; PUEBLO POLICE
OFFICER TOUWICK,

    Defendants-Appellees.

No. 01-1112
(D.C. No. 00-K-2462)
(D. Colo.)

---

**ORDER AND JUDGMENT** *

---

Before **EBEL** , **KELLY** , and **BRISCOE** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Dr. Thomas R. Monroe appeals from the dismissal with prejudice of his suit brought pursuant to 42 U.S.C. § 1983. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

I.

Dr. Monroe claims that two officers of the Pueblo Police Department violated his First, Fourth, and Fourteenth Amendment rights when they entered a building owned by him but occupied as a residence by Cathy and Gilbert Trujillo and their family. Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b), alleging absence of jurisdiction over Gilbert Trujillo, failure to state a claim, absolute immunity, and qualified immunity. Defendants also argued that Dr. Monroe had no legitimate expectation of privacy in the residence. Defendants' motion to dismiss was based not only on the complaint, but also on a supporting affidavit and an additional document attached to it.

Dr. Monroe attached several more documents to his response to the motion to dismiss, which the court considered in resolving the motion. The district court granted the motion to dismiss "for the reasons set forth in the [defendants'] motion" without specifying the distinct basis for dismissal. R. Doc. 22. The court concluded that the complaint was frivolous and "utterly without merit." *Id.*

Because the district court considered facts outside the pleadings to resolve this action, we construe the judgment as a grant of summary judgment.

-2-

*See* Fed. R. Civ. P. 12(b) (providing that where matters outside the pleadings are presented to and considered by the court, a motion to dismiss shall be treated as a motion for summary judgment under Fed. R. Civ. P. 56); *Wells v. Shalala*, 228 F.3d 1137, 1140 n.1 (10th Cir. 2000). We review the grant of summary judgment de novo, and judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs*., 165 F.3d 1321, 1326 (10th Cir. 1999).

## II.

The controversy in this case began when defendants Officer Waring and Officer Touwick accompanied employees from the Pueblo County Department of Social Services (Department) on a court-ordered home visit to the Trujillo's home. The Trujillos were ordered to allow Department employees to conduct a home study "wherever the [Trujillos] and children may reside, on November 1, 2000 at 11:00 a.m." and to allow the Department "full access to the home." *Id.* Doc. 1, Ex. 2 at 2. The date of the home visit was to be "non-cancelable and

-3-

non-negotiable," and the order provided that "[a]t least one (1) parent must be present, and no other person besides the Respondents and the children, shall be allowed in the home." *Id.*

On November 1, the Trujillos and their family occupied a residence located at 1138 East Evans in Pueblo owned by Dr. Monroe. The complaint alleges that the residence was also used for Dr. Monroe's business purposes, including storage of confidential records of outpatients serviced by Case Management Services [hereinafter "CMS"], for which Dr. Monroe is the Clinical Director. According to her affidavit, Cathy Trujillo was the "resident manager" for CMS. R. Doc. 19, at 9.

Officers Waring and Touwick arrived at the Trujillos' residence for the court-ordered visit just before the scheduled time. When the officers saw the Trujillos driving away, they pulled their car over and told them to return to the house for the visit. Mr. Trujillo returned to the house, but Mrs. Trujillo left. Mr. Trujillo told the officers that Dr. Monroe was not present, but that Mr. Monroe "did not want any police or [Department] personnel on or in his house or property." R. Doc. 1, Ex. 1 at 1. The officers ordered Mr. Trujillo to open the door to the house so that the Department employees could conduct the home visit, and the two officers accompanied them inside. According to Mr. Trujillo's affidavit, "[w]e walked though the house, did the home visit then

Officer Waring asked me where the records were. I told him they were in a closet in a room. We walked out . . . ." *Id.* at 2.

## III.

Rather than pointing to specific legal errors or making objections to points on which the district court based its dismissal of the complaint, Dr. Monroe's appellate brief asks general questions premised on his erroneous assumption that the officers conducted an illegal search. We first note that Dr. Monroe failed to allege facts showing that he was subjected to a search. "It is well-established that government activity is not a search unless it intrudes upon an individual's justified expectation of privacy." *United States v. Hutchings*, 127 F.3d 1255, 1259 (10th Cir. 1997). Although Dr. Monroe construes the above-described behavior of Officers Waring and Touwick as supporting a claim of unconstitutional search, it clearly does not. "Every search necessarily involves the use of sensory perception, i.e., touch, taste, smell, sight, or sound, but as case law teaches us, the use of sensory perception does not necessarily constitute a search." *United States v. Nicholson*, 144 F.3d 632, 636 (10th Cir. 1998). It is undisputed that the officers entered the residence at 1138 East Evans for the purposes of enforcing the order requiring a home visit and not for the purpose of conducting a search. Mr. Trujillo, the only witness present during the home visit, did not allege that the officers actually saw or touched any business or confidential records belonging to

-5-

Dr. Monroe, or that they entered an area of the residence not occupied by the Trujillos, or that they searched or even opened the closet where Mr. Trujillo told Officer Waring the records were stored. Dr. Monroe has thus failed to allege facts showing that the officers used their sensory perceptions to conduct a "search" in the legal sense of the word.

Moreover, "an official charged with the duty of executing a facially valid court order enjoys absolute immunity from liability for damages in a suit challenging conduct prescribed by that order." *Valdez v. City & County of Denver*, 878 F.2d 1285, 1286 (10th Cir. 1989). Although Dr. Monroe contends (without standing, since he is not a party to the order) that the order requiring the Trujillos to allow the Department to conduct a complete home visit was unconstitutional, he alleges no facts indicating that it was not facially valid or that the officers physically entered any areas of the residence not within the scope of the order. *See Turney v. O'Toole*, 898 F.2d 1470, 1473-74 (10th Cir. 1990). Finally, although Dr. Monroe suggests that the officers violated the order because it provided that no other person besides the Trujillos and Department employees were to be allowed in the home during the home visit, the "no other person" language in the order does not apply to police officers requested to enforce it or to protect a party who is attempting to comply with it, as here.

In sum, the record clearly shows that Dr. Monroe failed to state facts or produce evidence showing that Officers Waring and Touwick violated his First, Fourth, or Fourteenth Amendment rights. The officers are further entitled to absolute immunity under the circumstances of this case. Because he cannot demonstrate that the officers abridged his constitutional rights, the district court also properly dismissed Dr. Monroe's claims against the Pueblo Police Department and Chief Billings. *See Trigalet v. City of Tulsa*, 239 F.3d 1150, 1155-56 (10th Cir. 2001) (holding that even if a city's police policies, training, and supervision are unconstitutional, the city cannot be held liable under § 1983 if the officers did not actually commit a constitutional violation); *Myers v. Okla. County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (holding that a municipality cannot be liable under § 1983 for its employees' actions if the employees committed no constitutional violation); *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993) ("A supervisor is not liable under § 1983 unless an 'affirmative link' exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise."). We conclude that this appeal is frivolous.

IV.

Dr. Monroe's open contempt for the courts and his use of totally inappropriate and contumacious language has not gone unnoticed. We caution Dr. Monroe that if he follows through with his promise to continue to file frivolous "appeals and Civil Actions upon Civil Actions . . . until we receive our Jury Trials in US District Court," R. Doc. 24 (Aff. of Thomas Monroe), he will be subject to monetary sanctions and filing restrictions. *See Stafford v. United States*, 208 F.3d 1177, 1179 (10th Cir. 2000) (awarding $4,000 to government under Fed. R. App. P. 38 as damages and costs in responding to frivolous appeal and imposing filing restrictions); *DePineda v. Hemphill*, 34 F.3d 946, 948 (10th Cir. 1994) (noting that litigants have "no absolute, unconditional right of access to the courts and no constitutional right of access to prosecute frivolous or malicious actions" and imposing restrictions).

The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

-8-