**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 25 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

VIRGINIA MORAGA,

      Plaintiff-Appellant,

v.

JOHN ASHCROFT, Attorney General of
the United States,

      Defendant-Appellee.

No. 03-1027
(D.C. No. 01-WY-1958-CB (OES))
(Colorado)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **PORFILIO**, Senior Circuit Judge.

Virginia Moraga ("plaintiff") was employed by the United States Department of

Justice, Bureau of Prisons ("BOP"), as a supervisory correctional officer at the Federal

Correctional Institution in Florence, Colorado, ("FCI-Florence"), from 1992 until

September 15, 1999. When she was hired by the BOP in 1992, plaintiff knew she had

injured her right knee in 1976, claimed that she was "up front" with this fact, and she was

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

hired by the BOP notwithstanding. In 1997, plaintiff had arthroscopic surgery on both knees. In May, 1998, plaintiff elected to have a total right knee replacement, which was performed by her orthopedic surgeon. As a result of the knee replacement, plaintiff since has suffered from a progressive arthritic condition. On June 29, 1998, plaintiff filed an application for disability insurance benefits with her private insurance carrier, and, about the same time, she also filed a claim with the Office of Worker's Compensation Programs, claiming that she, at that time, was totally disabled.[1]

As a result of her disability, the plaintiff has not performed any services for FCI-Florence since May, 1998. By letter, dated June 8, 1999, the BOP notified plaintiff that she had been absent from work for over a year, i.e., since May 24, 1998, that its latest medical information did not indicate when or if she would ever be able to return to work, and that she was subject to a "fitness for duty" examination. It would appear that the plaintiff had not released her medical records to the BOP. In this connection, she was informed by the BOP that she could submit additional information as to her current physical condition, which she did not. She was later examined by Dr. Barry Kaplan for the BOP to determine her present "fitness for duty." He concluded she was not then fit to return to duty.[2]

---

[1]"Total Disability" was defined by the insurance carrier as the inability to perform most of the duties of the insured's occupation due to a medically determined sickness or accidental injury.

[2]All correctional officers at FCI-Florence are responsible for maintaining the security of the institution and must satisfy the physical requirements for "Institution

It was in this general setting that on August 4, 1999, the BOP issued plaintiff a Notice of Proposed Removal. In that notice, plaintiff was advised that John Bell, plaintiff's supervisor, was recommending her removal from her position of a supervisory correctional officer because there was no expectation that her condition would improve to the point where she could safely perform the essential functions of her position. In response to that notice, plaintiff submitted no documentary evidence relating to her physical condition, but did make an oral response on September 8, 1999. (The record does not disclose any detail as to the nature of her "oral" response.) Based on the record before him, Warden Al Herrera then concluded that there was no alternative but to remove plaintiff from her position because she was unable to perform the essential functions of her position, with or without accommodation. It was the BOP's position that, because of the nature of their work, all supervisory correctional officers must be able to meet the physical requirements set forth above. Warden Herrera informed plaintiff of his decision by letter dated September 10, 1999, and terminated her employment effective September 15, 1999.

On September 15, 1999, plaintiff initiated an informal contact with an Equal Employment Opportunity Commission ("EEOC") counselor and complained that she had

_____

Positions." Those "physical requirements" included the ability to perform self-defense movements, running for an extended distance, dragging a body for an extended distance, carrying a stretcher with another person, climbing stairs, and lifting objects weighing 25 pounds or more.

been discriminated against by the BOP on the basis of her "physical and medical disability" and her "sexual orientation." In connection with plaintiff's claim based on "sexual orientation," plaintiff stated that she felt "that the institution [BOP] is discriminating against me because of my lifestyle, meaning because I am gay." The informal process did not resolve the matter and on October 24, 1999, plaintiff filed a formal complaint with the EEOC, at which time she was apparently represented by counsel. When asked on the form to "Check Below Why You Believe You Were Discriminated Against," plaintiff checked the boxes identified as "Disability", "Physical", "Sex Orientation", and "Reprisal". Although there was a box identifying "sex" as the basis for the discrimination, she did not check that box. In this general connection, on July 7, 2000, the BOP advised plaintiff, through her attorney, that, if the issue for investigation had not been correctly identified in her EEOC complaint, she should respond in writing within 15 days. Neither plaintiff nor her attorney indicated that she had incorrectly stated her claim of discrimination in her EEOC complaint. Jumping ahead, after completing its investigation, the EEOC, pursuant to 29 C.F.R. § 1614.109(b), dismissed plaintiff's complaint on February 8, 2001. Our search of the record, which has admittedly been difficult, does not indicate that the dismissal order, itself, is a part of the record on appeal. Hence, we do not know the reasoning of the EEOC.

The present case was filed in the United States District Court for the District of Colorado on October 4, 2001, naming as the defendant John Ashcroft, Attorney General

of the United States. The complaint is not in the record on appeal. However, from statements made by the parties in their respective briefs, we learn that plaintiff alleged a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.,* as amended, and of Section 501 of the Vocational Rehabilitation Act of 1973, 29 U.S.C. § 791. Defendant filed an answer to plaintiff's complaint, but the answer also is not a part of the record on appeal.

On September 27, 2002, the defendant filed a 21-page motion for summary judgment. Attached to that motion were 20 exhibits. That motion, along with the exhibits attached thereto, is a part of the record on appeal. In response thereto, plaintiff filed a 13-page response, attaching thereto 23 exhibits. That also is a part of the record on appeal. The motion and response, together with the exhibits attached to each, constitute 281 pages in the appellant's appendix. Hearing on the defendant's motion for summary judgment was held on November 7, 2002. On November 18, 2002, the district court entered a 19-page order granting defendant's motion for summary judgment. Plaintiff then filed a timely notice of appeal.

In her complaint filed in the United States District Court for the District of Colorado, it would appear that plaintiff claimed that in terminating her employment with the BOP, the latter had discriminated against plaintiff because of a "perceived disability," i.e., she was subjected to different working conditions than other workers without perceived disabilities, and, alternatively, that the BOP had discriminated against her

because of her gender. In this latter connection, plaintiff apparently claimed that two fellow employees, who were identified by name, had physical problems similar to those of the plaintiff, had been "accommodated" by the BOP, while she had not been similarly accommodated, and that one of the two was even allowed to perform his duties at the FCI-Florence while riding in a golf cart. Counsel asserts in her brief "that she [plaintiff] was ultimately terminated in furtherance of the BOP's 'discriminatory animus'."

On the motion for summary judgment, the district court concluded that, as to plaintiff's Title VII claim, the plaintiff had not exhausted her administrative remedies because she did not timely present a claim based on gender discrimination to the EEOC and, therefore, she could not assert such a claim in her action in the district court. As to her claim based on "perceived physical disability," the district court noted that the plaintiff, in pursuing her claim against her private insurance carrier in 1998, had declared that she was totally disabled and that such was inconsistent with her claim in September, 1999, that she was "fit" to resume her position as a supervisory correctional officer at the FCI-Florence. The district court concluded that such "inconsistent" positions defeated her claim based on a "perceived disability," citing *Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 797 (1999). On appeal, plaintiff asserts that the district court erred in so holding and in granting the defendant's motion for summary judgment.

On appeal, the plaintiff raises two issues, which she frames as follows:

> (1) Whether the district court erred in ruling as a matter of
> law that plaintiff had failed to exhaust all her administrative

- 6 -

remedies with regard to her gender discrimination claim under Title VII of the Civil Rights Act of 1964, when it held that her amendment to her charge of discrimination was not timely filed before the EEOC; and

(2) Whether the district court erred in granting summary judgment against the plaintiff on her disability discrimination claim under the Rehabilitation Act of 1973 when there were genuine issues of material facts as to whether any "inconsistent statements made by . . . [the plaintiff] as to her physical abilities to perform her essential job functions."

As stated, it would appear that in her complaint filed in the district court, plaintiff alleged that the defendant had discriminated against her in terminating her employment with the BOP at the FCI-Florence based on "perceived disability," when, in fact, she was, nonetheless, fit to return to work, and also because of her gender. As to the former, i.e., perceived disability, there is no dispute that such was raised before the EEOC. As concerns the claim of discrimination based on gender, the district court held that the plaintiff had not timely amended her complaint before the EEOC to include a claim based on gender discrimination, and, therefore, she had not exhausted the administrative remedies available to her by statute. Not having done so, the district court held that, as to her claim of discrimination based on gender, plaintiff could not raise it, for the first time, in her complaint filed in the district court. We shall consider the claim based on gender discrimination first.

## I. TITLE VII

Prior to instituting a court action under Title VII, a plaintiff alleging discrimination

in federal employment must proceed before the agency charged with the discrimination. 42 U.S.C. § 2000e-16(c).  Further, exhaustion of administrative remedies is a "jurisdictional prerequisite" to bringing suit in a district court under Title VII.  *Jones v. Runyon,* 91 F.3d 1398, 1399 (10th Cir. 1996).  The district court in the present case held that plaintiff had not raised the issue of gender discrimination before the EEOC and, therefor, could not maintain a claim for gender discrimination in the district court. Plaintiff appeals the district court's order dismissing her claim of gender discrimination, contending that she did make a timely claim of gender discrimination before the EEOC.

As stated, in the formal complaint filed by plaintiff with the EEOC, plaintiff claimed that in terminating her employment, the BOP had discriminated against her based on its perception that she was physically disabled, when, in fact, she was not, her sexual orientation, and by way of retaliation. (We are not here concerned with the claims based on "sexual orientation" or "retaliation.")  As indicated, though there was a "box" on the form identifying "sex" as the basis for a discrimination claim, plaintiff did not check that box, but did check the boxes for perceived disability, sexual orientation and retaliation. In this regard, "although her failure to mark the box for sex discrimination is not dispositive . . ., it certainly creates a presumption that she was not asserting claims represented by boxes not checked."  *Gunnell v. Utah Valley State College,* 152 F.3d 1253, 1260 (10th Cir. 1998).

It is agreed that in her formal complaint filed with the EEOC, plaintiff did not

claim that she was terminated because of "sex discrimination." However, counsel asserts that "sex discrimination" was added to her original complaint under 29 C.F.R. § 1614.106(d). That regulation provides as follows:

> A complainant may amend a complaint at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint. After requesting a hearing, a complainant may file a motion with the administrative judge to amend a complaint to include issues or claims like or related to those raised in the complaint.

It would appear from the record before us that plaintiff did not, as permitted by 29 C.F.R. § 1614.106(d), file a motion to amend her complaint to include a claim based on "sex discrimination." Be that as it may, plaintiff argues, and the defendant apparently agrees, that she can still raise a sex-discrimination claim in the district court if a claim of sexual discrimination was, in effect, raised in the course of the proceedings before the EEOC, i.e., referred to by the parties as a "procedural amendment." Pursuing the "procedural amendment" argument, counsel asserts that plaintiff did raise the question of sex discrimination during the course of the EEOC proceeding because she complained that other employees with disability problems similar to hers, were accommodated and that she was not so accommodated, and that the other employees who were accommodated were male, and she was a female, and, ergo, she was discriminated against because of her gender. We are not persuaded by this line of reasoning. It is just too tenuous to overcome the "presumption" referred to in *Gunnell.*

Counsel alternatively suggests that plaintiff "procedurally amended" her initial complaint filed with the EEOC to include a claim of gender discrimination by virtue of certain questioning of her by an EEOC investigator, and the answers she gave thereto. For example, counsel cites the ensuing colloquy between an EEOC investigator and the plaintiff:

> Q. So your Complaint is based on the fact that you feel they did not make a reasonable accommodation for your physical disability; is that -
>
> A. Or what they perceived as -
>
> Q. Or what they perceive. It's not only failure to make a reasonable accommodation but unequal treatment because you believe you know of a couple of other cases in which they did make accommodation -
>
> A. Yes, sir.
>
> Q. - for a person's physical disability?
>
> And you feel that was caused, at least in part, due to your sexual orientation?
>
> A. Yes, sir.
>
> Q. Is that correct?
>
> MS. WIELAND (Moraga's counsel): And gender.
>
> MS. MORAGA: And gender.

We do not believe that the foregoing colloquy constitutes a "procedural amendment" to her complaint. It is insufficient to defeat the "presumption" that when

plaintiff did not check the "box" marked "sex," she was not claiming sex discrimination as a cause for her termination of employment with the BOP. *Id.*

In sum, the plaintiff did not show that there was a "genuine issue of material fact" which would defeat the BOP's motion for summary judgment on plaintiff's Title VII claim. We generally agree with the district court's analysis of this particular matter, i.e., that not having presented the question of gender discrimination to the EEOC, plaintiff could not raise it in her complaint filed in the district court. The district court did not have jurisdiction to entertain plaintiff's belated claim of termination because of her gender.[3]

---

[3]On the question of whether the district court had jurisdiction to entertain plaintiff's belated claim that she had been discriminated against because of her gender, our unpublished opinion in *Schroeder v. Runyon,* 1998 U.S. App. LEXIS 24855, has present pertinency. In that case, we spoke as follows:

> A judicial complaint for relief may encompass any discrimination like or reasonably related to the allegations in the plaintiff's EEOC charge, including new acts occurring during the pendency of the charge. . . . However, if a discriminatory act occurs prior to the EEOC filing and plaintiff fails to allege the act or claim in the EEOC charge, the act or claim ordinarily will not reasonably relate to the charge. . . . [Plaintiff's] silence in response to the [employer's] letter outlining the scope of its proposed investigation is convincing evidence she did not intend to pursue the alleged acts of gender-based discrimination contained in her amended judicial complaint (both of which allegedly occurred well prior to the filing of her charge).

## II. VOCATIONAL REHABILITATION ACT OF 1973

29 U.S.C. § 794 prohibits disability discrimination by a federal agency.

Specifically, 29 U.S.C. § 794(a) provides as follows:

> "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity . . . conducted by any Executive Agency."

To qualify for relief under 29 U.S.C. § 794(a), a plaintiff "must demonstrate that (1) he is a disabled person within the meaning of the law, (2) he is qualified for the job, and (3) he was discriminated against because of his disability. *Wells v. Shalala,* 228 F.3d 1137, 1144 (10th Cir. 2000). Under the Rehabilitation Act, a person is a qualified individual with a disability if she or he can perform the essential functions of her or his employment position that she or he holds or desires, with or without reasonable accommodation.

As stated, the district court did have jurisdiction to hear plaintiff's claim that the BOP discriminated against her because of its perception that she was physically disabled and could not perform the duties of the employment she had with the BOP, for example, "chasing fleeing inmates" from the FCI-Florence. That issue was timely raised before the EEOC. On the merits of this claim, the district court reasoned that, since she claimed, shortly after her knee replacement on May 1, 1998, in her claim for disability benefits, that she was "totally disabled," such was "inconsistent" with her belief that, at the time of

- 12 -

the termination proceedings leading up to termination in June, 1999, she was nonetheless "fit" to return to her old job at the prison. Counsel for the plaintiff argues that she could be "totally disabled" in June, 1998, and by June, 1999, have recovered therefrom to the extent that she was "fit for duty." That line of reasoning overlooks the fact that in June, 1999, more than a year after her knee replacement during which time she had performed no work for the BOP, the BOP advised plaintiff that she could submit medical records, and the like, showing her "present fitness," and she submitted nothing. In that context, the BOP had plaintiff examined by its physician, Dr. Barry Kaplan, who pronounced her as "unfit" to resume her former position as a guard at the prison. On that general state of the record, we believe that there was no genuine issue of material fact regarding her fitness to return to her former position as a prison guard in June, 1999.[4] In short, the record, viewed in its entirety, does not show "present fitness" to return to duty. Rather, it shows the contrary.

Judgment affirmed.

Entered for the Court,

Robert H. McWilliams
Senior Circuit Judge

---

[4]We are advised that in 2000, a year after plaintiff's employment with the BOP was terminated, her own personal physician stated that she was still not physically fit to return to duty at FCI-Florence, and that there was no expectation that her condition would improve to a degree where she could safely perform the essential functions of her employment at the BOP.