FILED
United States Court of Appeals
Tenth Circuit

January 17, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

VERNELL WICKWARE, JR.,

      Plaintiff - Appellant,

v.

JOHNS MANVILLE,

      Defendant - Appellee.

No. 15-6028
(D.C. No. 5:13-CV-00424-D)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **HOLMES**, and **MATHESON**, Circuit Judges.

Vernell Wickware, Jr., filed claims of discrimination and retaliation against

his former employer, Johns Manville, alleging violations of the Americans with

Disabilities Act as amended ("ADA"). The district court granted summary

judgment in favor of Johns Manville on the discrimination claims and dismissed

the retaliation claim for lack of jurisdiction. Exercising jurisdiction under 28

U.S.C. § 1291, we **affirm**.

---

[*]     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Federal Rule of Appellate
Procedure 32.1 and Tenth Circuit Rule 32.1.

**I**

On an appeal from a ruling granting summary judgment, "'we examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party,' without making credibility determinations or weighing the evidence." *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1213 (10th Cir. 2015) (quoting *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 953 n.2 (10th Cir. 2012)); *accord Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1058 (10th Cir. 2009). We recite the relevant facts with this standard in mind.

**A**

For approximately twenty-six years, Mr. Wickware was employed by Johns Manville, a company that manufactures commercial roofing. At some time prior to 2011, Mr. Wickware became a forklift operator and a relief foreman at Johns Manville's Oklahoma City, Oklahoma, plant, and, in early 2011, John Dodi became the plant manager. At all relevant times, the plant employed a human resources manager, named Jim Shantz, who was responsible for overseeing Johns Manville's written personnel policies regarding equal employment opportunity.

Mr. Wickware suffers from a medical condition in his left knee. This condition prevents him from undertaking certain physical activities, including sporting activities and walking long distances. He is also limited in the range of tasks that he can perform on the job. On the recommendation of Dr. Thomas

Flesher, Mr. Wickware's physician, Mr. Wickware may only occasionally lift no more than twenty to fifty pounds "of force" and only occasionally squat, kneel, crawl, or climb. Aplt.'s App. at 150 (Flesher Rpt., dated Jan. 24, 2011). Mr. Wickware is also limited in the length of time he can work—*viz.*, if he is expected to work twelve-hour days, he may work no more than four days per week.

Johns Manville recorded these restrictions in its personnel files, and, in 2010—before Mr. Dodi became plant manager—entered into an agreement with Mr. Wickware that he would work as a forklift operator subject to the restrictions. Under the agreement, Mr. Wickware would have to meet the following specific physical requirements:

> Operating Forklift continuously during production to maintain work flow, maintains product packing, supplies bags, cores and any other material needed for production. Operator completes repacking resulting from damage, equipment failure or weather. This activity requires operator to mount and dismount the forklift on a continuous basis during shift operations, supporting upset condition, checking quality, as needed. May perform other activities not identified. 70% of the time at the position will be seated, 30% of the time at the position will be standing/walking. Occasional lifting of materials up to 65 lbs will be required. Breaks are self driven, with the Operator being relieved from duty for a ½ hour lunch.

Aplt.'s App. at 148 (Agreement, dated Sept. 17, 2010).

In May 2011, Mr. Dodi presented Mr. Wickware with a new restricted compliance agreement, which Mr. Wickware signed. The new agreement enumerated largely the same restrictions as the 2010 agreement, providing that:

(1) Mr. Wickware "[m]ay work in the medium work category"—but not in a higher work category; (2) he "[m]ay lift 20 [to] 50 pounds of force *occasionally*"; (3) he "[s]hould not squat, kneel, crawl, or climb more than *occasionally*"; (4) he should "[w]ork no more than four days a week when working twelve hour days"; and (5) "[o]ccasionally as defined by Dr. Thomas H. Flesher, III, M.D. means 1 to 33% of the work shift." *Id.* at 151 (Restricted Duty Compliance Agm't, dated May 18, 2011).

**B**

Beginning in 2010, Johns Manville implemented a wage program at its Oklahoma City plant called the Pay for Skills Plan. The Pay for Skills Plan determined wage rates under a point-system where each employee was assigned points based on how skilled or knowledgeable they were in each position in the plant. After Mr. Dodi became plant manager in 2011, he made changes to this program, which he believed would make the program easier to administer. Under the amended program, an employee's compensation was based on the number of positions the employee could perform in the plant. As part of the transition from the 2010 plan, current employees were assigned a wage rate based on their then-existing position at the plant, and they were allowed a grace period to learn the skills needed to qualify for and perform the number of positions that would allow them to remain at that wage rate.

The Pay for Skills Plan, as amended in 2011, required a relief foreman to be "[q]ualified in all lower operator levels."[1]  *Id.* at 155 (Okla. City Pay for Skills Program, dated July 1, 2011).  As the parties seem to agree, the phrase "lower operator levels" refers to the five operator positions—*viz.*, mat tender, coater, forklift, winder, and robot—and two relief operator positions—*viz.*, back end relief operator and front end relief operator.

The amended Pay for Skills Plan was implemented in July 2011, and, at that time, Mr. Wickware was working as a forklift operator and relief foreman.  In that same month, Mr. Dodi met with Mr. Wickware, provided Mr. Wickware with a job description for each of the five operator positions and the two relief foreman positions, and asked him to write down what [he] [thought] [he] can do on any job out here or what [he] can't do."  *Id.* at 73 (Dep. of Mr. Wickware, dated Mar. 4, 2014).  According to Mr. Dodi, Mr. Wickware's responses did not correspond with the medical restrictions that Johns Manville had in its records.  In this regard, Mr. Dodi arranged a second meeting with Mr. Wickware on August 25, 2011, and drafted a memorandum based on that meeting, clarifying which tasks

---

[1]      Under the 2011 Pay for Skills Plan, there are eight pay levels—*viz.*, "Operations Trainee"; "Operator, Level One"; "Operator, Level Two"; "Operator, Level Three"; "Operator, Level Four"; "Operator, Level Five"; "Back End Relief Operator"; and "Front End Relief Operator."  Aplt.'s App. at 154–55.  To advance from one level to the next, an employee must, *inter alia*, be "qualified" in additional operator positions.  *Id.* at 155.

required by each position Mr. Wickware could not perform. Both Mr. Dodi and Mr. Wickware signed the memorandum on September 6, 2011.

Following these meetings, Mr. Dodi hired an ergonomics specialist, Dr. Dennis Seal, to perform a survey of the ergonomic features of the tasks required by each position under the Pay for Skills Plan. Specifically, at Mr. Dodi's request, Dr. Seal evaluated "[a]ll tasks in which Mr. Wickware had originally qualified . . . based on ergonomic criteria and potential for physical stress or repetitive bodily harm." *Id.* at 186 (Ergonomic Eval. of Job. Reqs., dated Oct. 31, 2011). On September 23, 2011, Dr. Seal visited the Oklahoma City plant where he observed employees performing job tasks in each position, although Mr. Wickware was not present. Based on his observations at the plant and his prior experience performing ergonomic workstation assessments, Dr. Seal determined the physical requirements of each position relative to Mr. Wickware's ability to safely perform the tasks. Having concluded that "all required functions [were] within safe working limits with respect to weight and force, repetitions, squatting, kneeling or crawling," Dr. Seal memorialized his findings in a report issued on October 31, 2011. *Id.* at 187.

Mr. Dodi then presented Dr. Seal's written ergonomic assessment to Mr. Wickware. Mr. Wickware challenged the assessment's findings based on his medical restrictions, which were already on file with Johns Manville by the time of the assessment. Although Dr. Seal had concluded that Mr. Wickware could

perform all the tasks required by each position, Mr. Wickware believed that many of the tasks would necessitate physical activity that he was restricted from doing.

Based on Mr. Wickware's refusal to accept the findings of the assessment, Mr. Dodi placed Mr. Wickware on paid leave and asked him to submit to a medical evaluation to provide updated medical restrictions. However, Mr. Wickware was unable to obtain a second evaluation from Dr. Flesher, the physician who performed Mr. Wickware's first evaluation and recorded Mr. Wickware's medical restrictions then on file with Johns Manville. Mr. Wickware instead went to his primary physician, Dr. Carl Limbaugh; Mr. Wickware presented Mr. Dodi a handwritten note on Dr. Limbaugh's stationary. The note stated that Mr. Wickware had a knee injury, was unable to squat repetitively, lift more than twenty pounds, or stand for prolonged periods. *See id.* at 189 (Note of Dr. Limbaugh, dated Jan. 18, 2012). Mr. Dodi told Mr. Wickware that he did not understand the medical restrictions stated in Dr. Limbaugh's note and needed additional information.

Although Mr. Wickware disagreed that additional information was needed, Mr. Shantz, the plant human resources manager, arranged for Mr. Wickware to obtain an evaluation from a specialist named Dr. Gannaway, who was retained by Johns Manville. Dr. Gannaway concluded that Mr. Wickware "needs to avoid pivoting, loading, twisting, [and] pushing & twisting," and that he should "never" squat or climb ladders. *Id.* at 193 (Dr. Gannaway's Eval., dated Jan. 25, 2012).

Dr. Gannaway also concluded that Mr. Wickware should only occasionally (i.e., one to thirty-three percent of the time) stand, walk, lift up to fifty pounds, push or pull up to fifty pounds, or climb stairs.

On January 31, 2012, following Dr. Gannaway's evaluation, Mr. Wickware met with Mr. Shantz and reviewed the tasks required by each position. During the meeting, Mr. Wickware noted his medical restrictions in performing each task. Based on Mr. Wickware's responses, Mr. Shantz updated the August 25, 2011, memorandum clarifying Mr. Wickware's medical restrictions as to each position. The resulting updated version of the memorandum contained no changes from the original. Specifically, it provided Mr. Wickware's comments as to each position and stated either "No changes to the above" or "above is still accurate." *Id.* at 194–96 (Clarification of Abilities/Restrictions, dated Jan. 31, 2012).

On February 13, 2012, Mr. Dodi and Mr. Shantz held a meeting with Mr. Wickware in which they informed him of their belief that he was qualified to perform only the position of forklift operator and that he would be assigned to an "Operator, Level One" position—i.e., the second lowest pay level under the 2011 Pay for Skills Plan. Under the plan, an employee would be assigned to an "Operator, Level One" position based on his "[q]ualification on and operation of one of the five operator positions." *Id.* at 154. However, Mr. Wickware maintained that he would be qualified for an additional operator position—namely, coater operator—if an accommodation was made to allow him

-8-

to use a smaller shovel to avoid having to lift more than fifty pounds when cleaning the coater machine.[2] The meeting then adjourned until a second meeting was held the following day.

At the second meeting, Mr. Dodi and Mr. Shantz informed Mr. Wickware of an adjustment; they indicated that Mr. Wickware would be classified in an "Operator, Level Two" position. Mr. Dodi and Mr. Shantz believed that Mr. Wickware was qualified to perform the coater operator and forklift operator position. Although Mr. Wickware agreed that he was indeed qualified for these two operator positions, he made it clear at the meeting that he believed he could be a relief foreman regardless of whether he was qualified for *any* of the operator positions.

Mr. Wickware believed that unlike the operator positions, which had written job tasks and standards, Johns Manville did not maintain a list of job tasks and standards for the relief foreman position. Furthermore, in Mr. Wickware's view, if it was "the company's position that you have to be qualified for each of the operator positions before you get to be a relief foreman," no written policies stated that requirement. *Id.* at 91. However, based on the 2011 Pay for Skills Plan, Mr. Dodi did not accept that Mr. Wickware was "qualif[ied] as a Relief

---

[2] The primary responsibility of a coater operator, as listed in Johns Manville's job standards, "is to operate both the ply and filler coater machines . . . . [and] [p]erform[ ] daily housekeeping functions." Aplt.'s App. at 157 (Coater Operator Job Standards, dated July 26, 2011).

Foreman," because, in Mr. Dodi's view, "an employee must be qualified and able to perform all production operator positions," and Mr. Wickware could perform only two operator positions.[3] *Id.* at 131. Therefore, Mr. Dodi placed Mr. Wickware in a "Level 2 Operator" position and did not assign him to the position of relief foreman.

## C

In May 2012, Mr. Wickware filed a timely charge with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on his adjusted "title and pay"—*viz.*, his demotion from relief foreman to forklift operator. On January 17, 2013, Mr. Wickware indicated to the EEOC investigator that he desired to amend the charge to include a retaliation claim. Mr. Wickware had previously complained to Mr. Shantz that Mr. Dodi was harassing him for filing an EEOC charge. In particular, he complained to the EEOC investigator that Johns Manville was using confidential information obtained during mediation against him in responding to the EEOC charge. The investigator advised Mr. Wickware to provide a statement or affidavit alleging retaliation within ten days, but Mr. Wickware failed to do so or to provide any additional evidence.

On January 31, 2013, the EEOC issued a document finding that there was no reasonable cause to believe that an ADA violation occurred based on the

---

[3]    Under the 2011 Pay for Skills Plan, beneath the position "Relief Foreman" is listed, *inter alia*, "Qualified in *all* lower operator levels." Aplt.'s App. at 155.

evidence that Mr. Wickware had provided. In the same document, the EEOC dismissed Mr. Wickware's charge and issued a notice of right to sue. Mr. Wickware simultaneously filed an amended charge that included both discrimination and retaliation claims, but the record does not indicate that the EEOC ever addressed the amended charge or issued notice of a right to sue under the retaliation claim.

Mr. Wickware filed suit in the United States District Court for the Western District of Oklahoma after receiving his notice of right to sue. In his complaint, Mr. Wickware asserted that Johns Manville violated the ADA by failing to accommodate his disability, regarding him as being disabled to such an extent that he could not perform the essential functions of his job, and retaliating against him after he filed the EEOC charge.

After the close of discovery and a full round of briefing, the district court granted summary judgment to Johns Manville. The court first determined that it lacked subject-matter jurisdiction to decide the merits of Mr. Wickware's claim of retaliation because Mr. Wickware presented no facts from which the court could conclude that he filed an administrative complaint regarding that claim. Turning to the discrimination claim, the court opined that Mr. Wickware failed "to set forth specific facts that show a genuine issue for trial on the question of whether he was qualified with reasonable accommodation to satisfy the job requirements of a relief foreman in 2012." *Id*. at 464 (Order, dated Nov. 7, 2014). In reaching

its decision, the court did not first rule on Mr. Wickware's earlier-filed motion to compel responses to certain questions he asked Mr. Dodi and Mr. Shantz at their depositions. The court also expressly refused to consider the statements of three Johns Manville employees, Scott Henderson, Christian Islas, and Monte Jeffries.

After granting Johns Manville's motion to strike Mr. Wickware's objection to its bill of costs as untimely, the district court denied Mr. Wickware's motion for new trial or reconsideration pursuant to Federal Rule of Civil Procedure 59. In denying the Rule 59 motion, the court expressly declined to consider the deposition testimony of Lee Glossett, a former Johns Manville employee, which Mr. Wickware presented for the first time as an attachment to his motion. Subsequently, the court taxed costs against Mr. Wickware.

Mr. Wickware has timely appealed from the district court's rulings.

## II

## A

## 1

Before taking up Mr. Wickware's arguments for reversal with respect to his disability-discrimination claim, we set forth the applicable legal standards.

### a

Mr. Wickware's discrimination claim was dismissed on summary judgment. "We review the district court's grant of summary judgment de novo, applying the same standard as the district court." *Hawkins v. Schwan's Home Serv., Inc.*, 778

-12-

F.3d 877, 882 (10th Cir. 2015) (quoting *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011)); *accord Monge v. RG Petro–Mach. (Grp.) Co.*, 701 F.3d 598, 604 (10th Cir. 2012). Accordingly, "[w]e view the facts, and all reasonable inferences those facts support, in the light most favorable to the nonmoving party." *Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 947 (10th Cir. 2011).

Generally, a district court should grant summary judgment "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and "[a]n issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998); *accord Lounds*, 812 F.3d at 1213.

**b**

Because Mr. Wickware contends that Johns Manville intentionally discriminated against him by demoting him from his position as a relief foreman, this appeal concerns, in part, a claim of disparate-treatment discrimination. *See Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1189 (10th Cir. 2003). "We have described the prima facie case for such a claim as 'not onerous.'" *Hawkins*, 778 F.3d at 883 (quoting *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005)).

Specifically, a plaintiff must show: "(1) [ ]he is disabled . . . ; (2) [ ]he is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) [ ]he was discriminated against because of [his] disability." *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1118 (10th Cir. 2004); *accord Osborne v. Baxter Healthcare Corp.*, 798 F.3d 1260, 1266 (10th Cir. 2015). "It is . . . incumbent upon [Mr. Wickware] at the summary-judgment phase to 'rais[e] a genuine issue of material fact on each element of his prima facie case.'" *Hawkins*, 778 F.3d at 883 (second alteration in original) (quoting *Davidson*, 337 F.3d at 1189).

"We generally review disparate-treatment claims under the framework of *McDonnell Douglas Corp. v. Green*." *Id.* (citations omitted); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). Accordingly, under this burden-shifting rubric, if Mr. Wickware was successful in establishing a prima facie case, the onus would be on Johns Manville "to offer a legitimate nondiscriminatory reason for its employment decision." *Davidson*, 337 F.3d at 1189; *accord Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1259 (10th Cir. 2001). If Johns Manville provided a nondiscriminatory reason for its decision, the burden would shift back to Mr. Wickware "to show a genuine issue of material fact as to whether [Johns Manville's] reason for the adverse employment action is pretextual." *Id.*; *accord Osborne*, 798 F.3d at 1267.

However, we need not apply this burden-shifting framework here. "If the employer admits that the disability played a prominent part in the decision, or the plaintiff has other direct evidence of discrimination based on disability, the burden-shifting framework may be unnecessary and inappropriate." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 n.3 (10th Cir. 1997); *accord White v. York Int'l Corp.*, 45 F.3d 357, 361 n.6 (10th Cir. 1995); *see also Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1184–85 (6th Cir. 1996). "Instead, an employer will defend its decision on the ground that the plaintiff is not otherwise qualified for the position, with or without reasonable accommodation." *Davidson*, 337 F.3d at 1189; *accord Hawkins*, 778 F.3d at 883.

"At this point, the plaintiff's status as a *qualified* individual with a disability becomes 'the determinative issue in the case.'" *Hawkins*, 778 F.3d at 883 (quoting *Davidson*, 337 F.3d at 1189). To make this determination, we consider "two criteria." *Robert v. Bd. of Cty. Comm'rs*, 691 F.3d 1211, 1216 (10th Cir. 2012). "First, we must assess whether [Mr. Wickware's] impairment prevented [him] from performing the essential functions of [his] job. If so, we must then determine whether [he] might have nevertheless been able to perform those functions if [Johns Manville] provided [him] a reasonable accommodation." *Id.* (citations omitted); *accord Davidson*, 337 F.3d at 1190. "To be clear, however, we will not obligate an employer to create a position out of wholecloth to accommodate the individual in question." *Hawkins*, 778 F.3d at 884; *see Smith*

-15-

*v. Midland Brake, Inc.*, 180 F.3d 1154, 1174–75 (10th Cir. 1999) (en banc); *accord Mason*, 357 F.3d at 1119.

The ADA defines "qualified individual" as a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that [he] holds or desires." 42 U.S.C. § 12111(8). The statute further provides that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description . . . , this description shall be considered evidence of the essential functions of the job." *Id.* The statute also broadly defines "reasonable accommodation" to include, *inter alia*, "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, [and] training materials or policies." *Id.* § 12111(9)(B). Applying the material terms of this statute, we have previously said that "[a plaintiff] is a qualified individual as long as he can perform a job [offered by the employer] that he desires." *Hawkins*, 778 F.3d at 884 (alterations in original) (quoting *Davidson*, 337 F.3d at 1190).

In determining "what functions of a job are essential," 42 U.S.C. § 12111(8), we look to the ADA's implementing regulations, duly promulgated by the EEOC, which define "essential functions" as "the fundamental job duties of the employment position the individual with a disability holds or desires," but not

"the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). For example, "[t]he function may be essential because the reason the position exists is to perform that function." *Id.* § 1630.2(n)(2)(i). We have not hesitated to rely on the EEOC's regulations in our essential function analysis. *See Mason*, 357 F.3d at 1119. Moreover, we give deference to an employer's judgment concerning the essential functions of a job. *See, e.g.*, *Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1262 (10th Cir. 2006) ("We weigh heavily the employer's judgment regarding whether a job function is essential."); *accord Hawkins*, 778 F.3d at 890. And this deferential approach is "consonant" with Congress's express desire to shore up an employer's ability to choose and maintain qualified workers. *Hawkins*, 778 F.3d at 885; *see* H.R. Rep. No. 101–485(II), at 55 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 337.

**2**

Mr. Wickware contends that the district court's decision to deny him relief under his discrimination claim suffered from several legal errors. He primarily disputes the court's determination that he failed to show that he met the "requirement to be classified as a relief foreman." Aplt.'s App. at 461. Specifically, Mr. Wickware contends that he needed only to "create a dispute of fact" over whether he was "qualified" to perform the essential functions of the operator positions, not whether he was able to perform those functions. Aplt.'s Opening Br. at 29–30. In this regard, Mr. Wickware argues that the district court

erroneously rejected multiple affidavits of Johns Manville employees supportive of his theory of the essential functions of the relief foreman position. He also challenges the district court's determination that he could not perform the essential functions of the relief foreman position even with an accommodation; Mr. Wickware reasons that he should have been allowed to reassign tasks he could not perform by himself.

In affirming the district court's grant of summary judgment, we focus our analysis on the court's conclusion that Mr. Wickware failed to make a prima facie ADA case. The district court's well-reasoned analysis on this issue, standing alone, provides a firm foundation for affirming its summary-judgment ruling. Specifically, we hold that the district court (1) correctly concluded that Mr. Wickware could not perform the essential functions of the relief foreman position, and (2) did not err in its determination that the accommodation Mr. Wickware sought was facially unreasonable.

**a**

The analytical rubric for addressing Mr. Wickware's appellate arguments was clearly framed in *Wells v. Shalala*, 228 F.3d 1137, 1144 (10th Cir. 2000). Under that rubric, we first "must determine whether [Mr. Wickware] can perform the essential functions of the job, *i.e.*, functions that bear more than a marginal relationship to the job at issue." *Id.*; *accord Hawkins*, 778 F.3d at 887. Second, if we conclude that Mr. Wickware is unable to perform the essential functions of

the relief foreman position, "we must determine whether any reasonable accommodation by [Johns Manville] would enable him to perform those functions." *Shalala*, 228 F.3d at 1144; *accord Hennagir*, 587 F.3d at 1264. At this second stage of our analysis, "the relevant inquiry in determining whether Plaintiff is 'qualified' . . . is whether *he has provided evidence* that [ ]he can be reasonably accommodated." *Shalala*, 228 F.3d at 1144 (alteration in original) (emphasis added) (quoting *Woodman*, 132 F.3d at 1340).

Guided by the EEOC's regulations, we have explicated factors that should be considered in determining whether a particular function is essential to a job—*viz.*, (1) "the employer's judgment as to which functions are essential"; (2) "written job descriptions"; (3) "the consequences of not requiring the incumbent to perform the function"; and (4) "the current work experience of incumbents in similar jobs." *Shalala*, 228 F.3d at 1144 (citing 29 C.F.R. § 1630.2(n)(3)). Thus, as part of our inquiry, we look to "the employer's judgment as to what functions of a job are essential, including those functions contained in a written job description." *Davidson*, 337 F.3d at 1191; *see* 42 U.S.C. § 12111(8). "[T]he essential function 'inquiry is not intended to second guess the employer or to require the employer to lower company standards,'" *Mason*, 357 F.3d at 1119 (quoting *Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 993 (10th Cir. 2001)), and "the plaintiff at all times bears the ultimate burden of persuading the trier of fact that he has been the victim of illegal discrimination based on his disability,"

*White v. York Int'l Corp.*, 45 F.3d 357, 361 (10th Cir. 1995). "Provided that any necessary job specification is job-related, uniformly enforced, and consistent with business necessity, the employer has a right to establish what a job is and what is required to perform it." *EEOC v. Picture People, Inc.*, 684 F.3d 981, 986 (10th Cir. 2012) (quoting *Hennagir*, 587 F.3d at 1262); *accord Davidson*, 337 F.3d at 1191. But we caution that, in the "necessary first step [of] identify[ing] the 'essential functions' of the position[,] . . . . the employer's judgment is not *conclusive* evidence." *Picture People, Inc.*, 684 F.3d at 997 (emphasis added).

**b**

We first assess whether Mr. Wickware has shown that he can perform the essential functions of the relief foreman position. Mr. Wickware asserts that he "simply needs to create a dispute of fact concerning whether other employees with the Relief Foreman title were required to perform all operator positions." Aplt.'s Opening Br. at 29. He rests this assertion on his broader argument that the relief foreman position requires that he "only be *qualified* for the operator positions," not capable of actually "performing those positions." *Id.* at 30. The district court here specified the regulatory factors that our caselaw articulates and, assessing Mr. Wickware's claim in light of those factors, concluded that he failed to demonstrate a genuine dispute of material fact bearing on the issue of whether "an *ability to perform* all operator positions was an 'essential function' of the position of relief foreman." Aplt.'s App. at 460 (emphasis added). Based on the

record before us and relying on the same criteria as the district court, we are satisfied that being able to perform all operator positions was an essential function of the relief foreman position.

**i**

In the instant case, Johns Manville's written description corresponding to the relief foreman position requires that the relief foreman be "[q]ualified in all lower operator levels." Aplt.'s App. at 155. Furthermore, Mr. Dodi indicated that the relief foreman "is required to be qualified and be able to perform all of the job positions," Aplt.'s App. at 146 (Dodi Dep., dated Mar. 7, 2014), and that the relief foreman's "value is in a great part due to his or her ability to be skilled and able to work in all of the positions," *id.* at 131 (Dodi Aff., dated Mar. 18, 2014). Coupled with the position description, Mr. Dodi's testimony is persuasive evidence that being able to perform all operator positions was an essential function of the relief foreman position. *See Kilcrease v. Domenico Transp. Co.*, 828 F.3d 1214, 1222 (10th Cir. 2016) (concluding that employer's "Mountain-Driving Requirement" was an essential function, *inter alia*, because employer "introduced evidence that a requirement of three years of verifiable mountain-driving experience was contained in the advertisement to which [plaintiff] responded," and plaintiff "cite[d] no authority for the proposition that a job requirement contained on the face of a job description cannot be essential merely because it has not been reduced to a written company policy"); *cf. Rorrer*

-21-

*v. City of Stow*, 743 F.3d 1025, 1039–40 (6th Cir. 2014) ("Testimony from the plaintiff's supervisor that a job function is actually marginal may effectively rebut a written description that states that a job function is essential.").

Although Mr. Wickware concedes that he is unable to *perform* all five lower operator positions, he holds steadfastly to the notion that he must "only be qualified for the operator positions," without any consideration as to whether he can actually perform the positions. Aplt.'s Opening Br. at 30. However, he offers no legal basis to support this distinction and, more specifically, fails to explain why being qualified in a lower operator position and being able to perform that position should not be deemed, for all practical purposes, conterminous requirements.

Mr. Wickware intimates, however, that his prior placement in the position of relief foreman makes him qualified to perform that position. However, although Mr. Wickware was assigned to the relief foreman position prior to the implementation of the 2011 Pay for Skills program, "the essential function inquiry is not conducted as of an individual's hire date." *Hennagir*, 587 F.3d at 1262. The statutory regime generally does not limit "an employer's ability to establish or change the content, nature, or functions of a job." *Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1124 (10th Cir. 1995). "We must look instead to whether a job function was essential at the time it was imposed on [Mr. Wickware]." *Hennagir*, 587 F.3d at 1262. Therefore, Mr. Wickware's prior assignment to the

relief foreman position is immaterial as to whether he could satisfy the essential functions of that position.

**ii**

Furthermore, we are not persuaded by Mr. Wickware's attempt to demonstrate that Johns Manville did not uniformly enforce the requirement that the relief foreman be "qualified in all lower operator levels." Aplt.'s App. at 155. Mr. Wickware argues that the only other relief foreman, Richard Lyons, was neither qualified for nor able to perform all lower operator positions. Mr. Wickware faults the district court for rejecting the affidavits of four current and former Johns Manville employees that he contends, viewed collectively, create a genuine dispute of material fact as to whether the relief foreman "was required to actual[ly] work at all operator positions." Aplt.'s Opening Br. at 33. However, noting that "a district court's assessments of the admissibility and probative value of affidavits at the summary-judgment phase involve, at bottom, evidentiary determinations," *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1201 (10th Cir. 2015), which we review for an abuse of discretion, *id.*, we conclude that the district court was well within its discretion in rejecting the affidavits.

In support of his contention that Mr. Lyons was not qualified to perform all lower level operator positions, despite being assigned to the relief foreman position, Mr. Wickware proffered the affidavits of Scott Henderson, Monte Jeffries, and Christian Islas. Mr. Henderson's stated reason for his belief that Mr.

Lyons was unqualified to be a relief foreman was that Mr. Lyons "did not know how to run a [coater] machine," and was therefore not qualified to be a coater operator. Aplt.'s App. at 373 (Aff. of Scott Henderson, dated Apr. 15, 2014). Mr. Jeffries also testified that he believed Mr. Lyons was "not qualified to work as the coater operator." *Id.* at 375 (Aff. of Monte Jeffries, dated Apr. 21, 2014). However, as the district court observed, Mr. Jeffries provided no factual basis for this belief. The district court found that, in both cases, Mr. Wickware failed to present testimony that would be admissible at trial, and we agree.

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see Hansen v. PT Bank Negara Indonesia (Persero)*, 706 F.3d 1244, 1250 (10th Cir. 2013) ("Although affidavits are entirely proper on summary judgment, the content or substance of the evidence contained therein must be admissible."); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Mr. Henderson's statement provides no factual or temporal context to support his conclusion regarding Mr. Lyons's lack of qualifications. Similarly, Mr. Jeffries provides no factual averments to support his contention that Mr. Lyons lacked qualifications as a coater. The probative value of both statements is thus so lacking that we may characterize them as bald assertions of the kind that

courts could permissibly deem inadmissible. *See Hansen*, 706 F.3d at 1251 (concluding that "the district court got it right in concluding that the information provided lacks an adequate foundation and therefore would be inadmissible," where "[t]he declaration is woefully short on details"); *Zokari v. Gates*, 561 F.3d 1076, 1089 (10th Cir. 2009) ("Although he may have had knowledge of other discriminatory conduct, his testimony did not provide sufficient information concerning his knowledge of such conduct for the district court to decide that he had personal knowledge of matters relevant to Mr. Zokari's trial."); *accord Felkins v. City of Lakewood*, 774 F.3d 647, 650 (10th Cir. 2014); *see also United States v. Brooks*, 727 F.3d 1291, 1302–03 (10th Cir. 2013) ("It is axiomatic that the probative value of evidence must be assessed in the factual context of a given case.").

Mr. Wickware also faults the district court for failing to consider in its summary judgment analysis the affidavit of Mr. Islas and the deposition testimony of Lee Glossett. The district court rejected this evidence in the context of ruling on Mr. Wickware's motion for reconsideration, pursuant to Federal Rule of Civil Procedure 59(e). We review denials of such postjudgment motions for an abuse of discretion. *See, e.g.*, *Jennings v. Rivers*, 394 F.3d 850, 854 (10th Cir. 2005) ("The district court denied plaintiff's postjudgment motion. On appeal, this court reviews that ruling for abuse of discretion."); *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997) ("We review a district court's ruling on a Fed. R. Civ. P.

59(e) motion under an abuse of discretion standard.").  However, we must conclude that the district court did not abuse its discretion in disregarding the affidavit of Mr. Islas and the testimony of Mr. Glossett.

To begin, Mr. Wickware did not timely identify Mr. Islas as a potential witness, and did not ask to amend his final witness list to include Mr. Islas. Nevertheless, on reconsideration, Mr. Wickware asserted that the court should have considered Mr. Islas's affidavit in ruling on summary judgment.  Citing Federal Rule of Civil Procedure 37(c)(1), the court disagreed.  It noted that Mr. Wickware "made no effort to justify his lack of disclosure or to cure it by asking to amend his witness list before summary judgment was granted," and that Mr. Wickware was "simply asking the Court to consider an argument that he could have made, but did not, before the entry of summary judgment."  Aplt.'s App. at 545.

We discern no abuse of discretion in this ruling regarding the Islas affidavit.  "[A] party must provide to the other parties and promptly file . . . the name and, if not previously provided, the address and telephone number of each witness."  Fed. R. Civ. P. 26(a)(3)(A)(i).  Moreover, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Vesom v. Atchison Hosp. Ass'n*, 279 F. App'x

624, 631 (10th Cir. 2008) (unpublished) ("The exclusion of evidence presented out of time is 'automatic and mandatory' unless the violation was either justified or harmless." (quoting *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996))).  Invoking Rule 37(c)(1), the district court properly found that Mr. Wickware failed to provide the requisite information regarding Mr. Islas and, because Mr. Wickware did not attempt to justify this failing or render it harmless, the court permissibly declined to consider the Islas evidence.

As for Mr. Glossett's deposition testimony, the district court rejected Mr. Wickware's characterization of the testimony as newly discovered evidence and found that the record "suggest[ed] a lack of reasonable diligence" by Mr. Wickware.  Aplt.'s App. at 545.  In this regard, Mr. Wickware did not take Mr. Glossett's deposition until after the discovery cutoff.  And, notably, the court observed that, though Mr. Wickware claimed not to know of Mr. Glossett's testimony at the time he filed his summary-judgment response brief, that "did not prevent him from seeking leave to add it to the summary judgment record before the Court issued its ruling" and he had "more that six months" to do so from the date the Glossett deposition was taken.  *Id.*  Consequently, the court declined to consider the testimony.  It did not abuse its discretion in doing so.

While "new evidence previously unavailable" is a cognizable ground for Rule 59(e) relief, *see Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000), "the movant must show either that the evidence is newly discovered

-27-

[or] if the evidence was available at the time of the decision being challenged, that counsel made a diligent yet unsuccessful effort to discover the evidence." *Somerlott v. Cherokee Nation Distribs., Inc.*, 686 F.3d 1144, 1153 (10th Cir. 2012) (quoting *Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1523 (10th Cir. 1992)).  Based on this record, we cannot conclude that the district court abused its discretion in disregarding the Glossett deposition testimony, after finding that it was not newly discovered and Mr. Wickware failed to exercise reasonable diligence.

### iii

In sum, viewing the facts in a light most favorable to Mr. Wickware, we conclude that the district court did not err in determining that he failed to demonstrate facts sufficient to raise a genuine dispute of material fact regarding whether being able to perform all operator positions was an essential function of the relief foreman position.  Mr. Wickware acknowledged that he could not perform all of the operator positions; thus, he could not carry out an essential function of the relief foreman position.

### c

Because Mr. Wickware could not perform an essential function of the relief foreman position, we next must determine whether any reasonable accommodation would have enabled him to perform that function.  *See Wells*, 228 F.3d at 1145.  Mr. Wickware bore the initial burden of initiating an "interactive

process" with Johns Manville and proposing an accommodation and showing that the accommodation was objectively reasonable. *Id.*; *see Woodman v. Runyon*, 132 F.3d 1330, 1344 (10th Cir. 1997) ("It is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." (quoting *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995))); *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1171 (10th Cir. 1999) ("In general, the interactive process must ordinarily begin with the employee."). If the plaintiff can demonstrate a facially reasonable accommodation, then the burden shifts to the employer to show its inability to provide the requested accommodation. *See Mason*, 357 F.3d at 1122. Mr. Wickware argues that he could satisfy the job requirements of a relief foreman *if* Johns Manville "allow[ed] him to assign someone else to an open slot for a position for which he was allegedly not qualified." Aplt.'s Opening Br. at 40. Because we conclude that the accommodation Mr. Wickware sought is not facially reasonable, we need not consider whether Johns Manville was able to provide it.

"The idea of accommodation is to enable an employee to perform the essential functions of his job; an employer is not required to accommodate a disabled worker by modifying or eliminating an essential function of the job." *Mathews v. Denver Post*, 263 F.3d 1164, 1168–69 (10th Cir. 2001). Reasonable accommodations may include "job restructuring, part-time or modified work

schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B).

Under this standard, Mr. Wickware's proposed accommodation is not facially reasonable. The single proposal he argues for on appeal is reassigning any operator tasks that he cannot perform to other operators. The ability to perform *all* of the operator tasks, however, was an essential function of the position. Mr. Wickware's proposal, therefore, is tantamount to removing an essential job function entirely, and we have held that such proposals are unreasonable. *See, e.g.*, *Hennagir*, 587 F.3d at 1264; *see also Allmond v. Akal Sec., Inc.*, 558 F.3d 1312, 1318 (11th Cir. 2009) ("[Plaintiff's] only suggestion is to remove the [essential job function] entirely. That proposal is not reasonable: it destroys the very standard we have just upheld as a legitimate business necessity."). Therefore, we conclude that Mr. Wickware has failed to satisfy his initial burden of proposing an accommodation and showing that the accommodation was facially reasonable.

**d**

We therefore conclude that the district court did not err in determining that Mr. Wickware failed to demonstrate a genuine dispute of material fact regarding

whether he was qualified to perform the essential functions of the relief foreman position with or without a reasonable accommodation. As a consequence, Mr. Wickware failed to establish a prima facie case of discrimination under the ADA and the district court properly entered judgment on this claim in favor of Johns Manville.

**B**

Mr. Wickware also contends that Johns Manville retaliated against him after he filed a charge with the EEOC. However, as the district court properly found, Mr. Wickware did not timely file this claim before the EEOC; therefore, his retaliation claim is barred due to his failure to exhaust his administrative remedies.

More specifically, the district court here ruled that it "lack[ed] subject matter jurisdiction to decide the merits of Plaintiff's ADA claim of retaliation" because he did not exhaust the claim before the EEOC. Aplt.'s App. at 456. Irrespective of whether the failure to exhaust implicates subject-matter jurisdiction,[4] it is beyond peradventure that "[e]xhaustion still serves the

---

[4] We acknowledge that we have previously held that "[i]n the Tenth Circuit, exhaustion of administrative remedies is a jurisdictional prerequisite to suit." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007); *accord Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005); *see also Apsley v. Boeing Co.*, 691 F.3d 1184, 1210 (10th Cir. 2012) ("Under both Title VII and the ADA, exhaustion of administrative remedies is a prerequisite to suit."). However, subsequently, in *Gad v. Kansas State University*, 787 F.3d 1032 (10th Cir. 2015), in holding that the EEOC'S "verification requirement"—that is,

(continued...)

important purposes of 'protecting employers by giving them notice of the discrimination claims being brought against them and providing the EEOC . . . with an opportunity to conciliate the claims.'" *Gad v. Kan. State Univ.*, 787 F.3d 1032, 1040 (10th Cir. 2015) (alteration in original) (quoting *Green v. Donahoe*, 760 F.3d 1135, 1140 (10th Cir. 2014)). Consequently, even if exhaustion is not jurisdictional, it is a condition precedent to suit. *See id.* at 1034

---

[4](...continued)

the EEOC's requirement that charges be verified (i.e., notarized or signed under penalty of perjury)—was "not jurisdictional," *id.* at 1036, we analyzed recent Supreme Court precedent and "reexamined the issue of whether exhaustion of administrative remedies is jurisdictional," *Hung Thai Pham v. James*, 630 F. App'x 735, 737 (10th Cir. 2015). *Gad* raises the question of whether the district court's jurisdictional rationale here remains legally viable. *See Martin v. Mt. St. Mary's Univ. Online*, 620 F. App'x 661, 662 (10th Cir. 2015) (referring to *Gad* when stating that "[a] recent case on an analogous issue leads us to question the district court's [jurisdictional] rationale"); *see also Arabalo v. City of Denver*, 625 F. App'x 851, 859–60 (10th Cir. 2015) (noting that in *Gad* "we called into question some of our circuit's earlier decisions concluding we lacked subject-matter jurisdiction for other [i.e., non-verification] failures to meet Title VII's requirements"). However, we need not resolve that question. As noted immediately *infra* in text, exhaustion of administrative remedies is still an important condition precedent to a lawsuit under the ADA and, because Johns Manville has never waived or forfeited its exhaustion defense, Mr. Wickware must still establish that he exhausted his retaliation claim. *See McQueen ex rel. McQueen v. Colo. Springs Sch. Dist. No. 11*, 488 F.3d 868, 873 (10th Cir. 2007) ("The [jurisdictional *vel non*] characterization is important, however, only when the defendant has waived or forfeited the issue: If exhaustion is a jurisdictional requirement, the district court *must* always dismiss if there has been a failure to exhaust. If exhaustion is not jurisdictional, the court must dismiss only if the issue has been properly presented for decision."); *see also Hung Thai Pham*, 630 F. App'x at 738 ("We need not decide whether the failure to cooperate in good faith with the EEOC results in a lack of jurisdiction, however, because the Secretary has not waived or forfeited the issue."); *Arabalo*, 625 F. App'x at 860 (recognizing that, irrespective of the resolution of the jurisdictional question, exhaustion is "a condition precedent to suit").

(noting that the verification requirement at issue there was a "non-jurisdictional condition precedent to suit"); *id.* at 1040 ("Holding verification non-jurisdictional does not imply any diminution in the need for plaintiffs to comply with this Title VII requirement.").

"[A]dministrative remedies generally must be exhausted as to each discrete instance of discrimination or retaliation." *Apsley v. Boeing Co.*, 691 F.3d 1184, 1210 (10th Cir. 2012); *accord Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1194–95 (10th Cir. 2004). Among other things, a charge must be "a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b).

Construing Mr. Wickware's filings before the EEOC liberally, *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007), no allegation within them would have put the EEOC or Johns Manville on notice that he was alleging that Johns Manville retaliated against him because of his EEOC charge (i.e., the purported protected activity). In the original charge, Mr. Wickware alleged that he was demoted because of his disability, but he made no mention of retaliation nor did he give a description of conduct resembling retaliation. Accordingly, we must consider whether Mr. Wickware timely filed a new EEOC claim or amended his original filing to allege incidents of retaliation. *See Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1227 (10th Cir. 2014) (requiring that "the plaintiff file[] a new

EEOC claim or otherwise amend[] her original EEOC claim to add the new incidents"); *see* 29 C.F.R. § 1601.12(b).

The EEOC's regulations allow for a complainant through amendments to his original charge to "alleg[e] additional acts . . . related to or growing out of the subject matter of the original charge," and those amendments "will relate back to the date the [original] charge was first received." 29 C.F.R. § 1601.12(b). "We have construed the 'reasonably related' exception to include most retaliatory acts subsequent to an EEOC filing." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1327 (10th Cir. 1999), *abrogated on other grounds by Martinez v. Potter*, 347 F.3d 1208 (10th Cir. 2003). However, Mr. Wickware was required to "file[ ] a new EEOC claim or otherwise amend[ ] h[is] original EEOC claim." *Eisenhour*, 744 F.3d at 1227.

Therefore, the "reasonably related" exception does not advance Mr. Wickware's cause—*viz.*, we see no indication from the record that Mr. Wickware attempted to amend his charge or file an additional charge alleging retaliation in a timely fashion. To be sure, on January 17, 2013, the EEOC investigator provided Mr. Wickware with a ten-day window to file an affidavit or statement to the effect that Johns Manville had retaliated against him. But Mr. Wickware did not file an amended charge within this authorized temporal window; he waited until January 31, 2013 to file the amended charge. Though Mr. Wickware insists that January 31 was "the deadline given him by the EEOC if he wanted to include his

retaliation claim in his charge," Aplt.'s Opening Br. at 22, there is no evidence in the record to support this assertion and thus it cannot generate a genuine dispute of fact.

January 31 was significant because—in addition to being the date Mr. Wickware tardily filed his amended charge—it is the day the EEOC dismissed his original charge and issued its notice of right to sue *relative to the original charge*. Mr. Wickware argues that he "should be able to rely upon the EEOC's issuance of the right to sue letter [relative to his amended charge], although it did not come 180 days after filing." *Id.* at 46. In other words, Mr. Wickware reasons that, even though the typical 180-day investigation period had not lapsed on January 31 with respect to the retaliation claim (embodied in his amended charge) when the EEOC issued its notice of right to sue, he should be able to rely on that notice for filing a federal lawsuit on his retaliation claim. In this regard, Mr. Wickware relies on authorities for the proposition that "such [a] premature issuance [of a notice of right to sue] does not preclude the immediate filing of a federal lawsuit." *Id.* However, Mr. Wickware's argument is specious and fundamentally misguided. The issue is not whether the EEOC's January 31 notice was premature relative to his amended charge including the retaliation claim; instead, the issue is whether that January 31 notice covered (i.e., related to) his amended charge at all. And the record is clear that it did not. Mr. Wickware had ten days to file his amended charge, including his retaliation claim, and he missed the

deadline.  Therefore, the amended charge was inconsequential.  And when the EEOC issued its notice of the right to sue on January 31, it only related to his original charge, which did not include a retaliation claim.

In sum, we conclude that Mr. Wickware was obligated to exhaust his administrative remedies before pursuing his retaliation claim in district court, and the record offers not even a hint that he did so.  Consequently, Mr. Wickware cannot obtain relief in federal court on his retaliation claim because he did not exhaust his administrative remedies.  Therefore, the district court did not err in dismissing Mr. Wickware's retaliation claim.

## C

Mr. Wickware also argues that the district court erroneously granted summary judgment to Johns Manville before ruling on his pending motion to compel.  Mr. Wickware filed his motion after Johns Manville moved for summary judgment; however, in his motion, Mr. Wickware did not seek protection under Federal Rule of Civil Procedure 56(d).  *See* Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: . . . (2) allow time to obtain affidavits or declarations or to take discovery.").  In this regard, we see no abuse of discretion in the district court's decision to grant summary judgment before considering the motion to compel.

Our caselaw is clear and dispositive that "[a]lthough the Supreme Court has held that, under [Rule 56(d)], summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition, this protection arises *only if the nonmoving party files an affidavit explaining why he or she cannot present facts to oppose the motion*." *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1536 (10th Cir. 1994) (emphasis added) (quoting *Dreiling v. Peugeot Motors of Am., Inc.*, 850 F.2d 1373, 1376 (10th Cir. 1988)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986). Put another way, "[w]here a party opposing summary judgment . . . fails to take advantage of the shelter provided by [Rule 56(d)] by filing an affidavit, there is no abuse of discretion in granting summary judgment if it is otherwise appropriate." *Campfield v. State Farm Mut. Auto Ins. Co.*, 532 F.3d 1111, 1125 (10th Cir. 2008) (quoting *Pasternak v. Lear Petroleum Expl., Inc.*, 790 F.2d 828, 832–33 (10th Cir. 1986)); *accord McKissick v. Yuen*, 618 F.3d 1177, 1190 (10th Cir. 2010).

In the instant case, Mr. Wickware's motion to compel failed to mention Rule 56(d) on its face, which is a problem in itself. *See Jones v. Secord*, 684 F.3d 1, 6 (1st Cir. 2012) ("But courts, like the deity, tend to help those who help themselves, and Rule 56(d) is not self-executing. A party must invoke it."). Moreover, we can glean only two instances from the record where Mr. Wickware suggested his motion was intended to aid him in gathering facts essential to

-37-

justify his opposition to Johns Manville's summary-judgment motion. In the first instance, Mr. Wickware attached an affidavit of his attorney to his motion to compel, stating that "it is vital that Wickware be able to depose Defendant's key witnesses regarding the meetings that took place . . . in which Wickware's employment situation was discussed." Aplt.'s App. at 264 (Aff. of Scott F. Brockman, dated Apr. 1, 2014). In the second instance, Mr. Wickware stated in his response to Johns Manville's motion for summary judgment that he was "unable to fully respond because Defendant's witnesses refused to answer certain questions about [Johns Manville's] decision-making process." *Id.* at 270 n.1 (Resp. to Def's Mot. for Summ. J., dated Apr. 21, 2014).

These suggestions are not enough. *See Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000) ("However, Rule 56(f) [i.e., now Rule 56(d)] does not operate automatically. Its protections must be invoked and can be applied only if a party satisfies certain requirements."); *id.* (deeming the requirements not satisfied and noting that, "[i]nstead of explaining what facts they want to discover, why they have not yet discovered them, and how additional time would help them rebut Western's allegations, Appellants state only that Western is in exclusive control of relevant information"); *see also Pina v. Children's Place*, 740 F.3d 785, 795 (1st Cir. 2014) ("[Movant's] asserted desire to 'explore' is perhaps more accurately characterized as a desire to 'fish,' and in either case, it falls well short of establishing entitlement to Rule 56(d) relief."); *id.* ("Notably

lacking from [the movant's] speculation as to [a witness's] veracity is any plausible basis for the court to conclude that specified, material facts probably existed"); *cf. Hackworth v. Progressive Cas. Ins., Co.*, 468 F.3d 722, 732 (10th Cir. 2006) (concluding that plaintiff's "statements, made in her response brief to [defendant's] motion for summary judgment to the effect that" she had not had time to review relevant discovery "are obviously insufficient").

In any event, critically, in the context of the second instance, Mr. Wickware conceded that he "believes there is sufficient evidence to deny summary judgment." Aplt.'s App. at 270 n.1. In other words, Mr. Wickware conceded that the district court had before it all the facts essential to deciding whether to grant or deny summary judgment. Therefore, we can find no indication from the record that Mr. Wickware took advantage of the shelter provided by Rule 56(d). Consequently, we see no abuse of discretion in the district court's decision to grant summary judgment before ruling on Mr. Wickware's motion to compel.

**D**

Finally, Mr. Wickware contends that the district court erred in declining to consider his untimely objection to Johns Manville's bill of costs. He urges us to recognize that courts "should be concerned about deciding motions based upon the merits of those motions, and not on technicalities." Aplt.'s Opening Br. at 65. However, he does not provide legal support to buttress his assertion that untimely

filings, even under the court's local rules, as here, must be considered before the court makes a dispositive ruling. Although, as the district court suggested, he could have advanced a theory of excusable neglect, *see* Fed. R. Civ. P. 6(b)(1) ("[T]he court may, for good cause, extend the time: . . . (B) on [a] motion made after the time has expired if the party failed to act because of excusable neglect."), he has never done so. Without an argument to the contrary, we would be hard-pressed to conclude that the district court abused its discretion in applying its local rules and declining to consider Mr. Wickware's untimely objection. *See Amundsen v. Jones*, 533 F.3d 1192, 1197 (10th Cir. 2008) ("We review a district court's application of its local rules for an abuse of discretion.").

## III

For the foregoing reasons, we **AFFIRM** the district court's judgment, specifically, its grant of summary judgment to Johns Manville with respect to Mr. Wickware's discrimination claim, its dismissal of Mr. Wickware's retaliation claim on lack-of-exhaustion grounds, and its grant of John's Manville's motion to strike Mr. Wickware's objection to costs.

ENTERED FOR THE COURT

Jerome A. Holmes
Circuit Judge